Judge Lohier will now join us. Thank you. Now I will call the regular calendar. The first case, and I understand those attorneys are arguing remotely, is William Montgomery v. Stanley Black & Decker, Inc. Where are the attorneys? Oh, there they are. I see. Mr. Florczyk, you're arguing for the appellate. Yes, Your Honor. Okay. Well, why don't you proceed? You've asked for three minutes for rebuttal. I have. Thank you. Thank you. Good morning, Your Honors. My name is Frederick Florczyk of Cursor & Fisher, and I represent plaintiff appellants on this appeal. This is an appeal from a decision of the district court on a motion to dismiss that grant that found for that refused to consider certain arguments raised by plaintiffs in response to additional evidence that was submitted by appellee Stanley Black & Decker and was subject only to being incorporated by reference. In short, the vacuums at issue here are household wet dry bags that contain a representation on them that they have a certain amount of peak horsepower. Specifically, with respect to my clients, that would be 5 peak horsepower or 5.5 peak horsepower. I understand that the court had requested the packaging be sent in. I think I saw it in the hearing. I think we did, and we have it. It's right next to us. Great. A quick review of that packaging kind of demonstrates the physical size differences of the claims at issue. You notice the peak horsepower claim is in 72-point font in the upper left-hand corner of the packaging. Counsel, this is just Louie. There is an MDL that I understand your client is not a part of, but there was, as a result of this multi-district litigation, a settled resolution that required the manufacturers to provide that disclaimer. Is that right? To an extent. Another line you're going to hear from me is context is crucial. I think that's what's involved in validating that settlement. When you say to an extent, was there a settled resolution? Was there a settlement? Yes. That required what? Basically, a certain disclaimer that largely comports with the disclaimer on the packaging here, but it was silent as to the placement, the size, and... So the font size is not settled. That's up to each individual manufacturer? Is that what you're saying? It's an open question. Look, I don't want to inject myself into the settlement negotiations there, but it seems that the settlement was crafted in a way to allow the manufacturers to continue using the claim. No, I understand that, but presumably the settlement was approved by the judge presiding over the MDL, right? Yes. The judge can't approve the settlement, but nothing in the settlement papers, nothing in the approval papers, nothing in the order had anything to do with the size of the disclaimer based on the label and how close it must be to the... Did the settlement approve the language of the disclaimer? I believe it did in large part. I don't think it materially differs from what is at issue on the packages today, but that doesn't mean that's effective. You don't claim that the language on this package deviated from the language of the disclaimer approved in the multi-district litigation? I think there might have been slight variations to account that these are made by ShopVac, but no, it's not so much about the language, but basically how it was placed on the packaging and whether or not the disclaimer actually served its stated purpose to draw attention or to qualify the settlement packaging. I think because of different factors, that was not... I think it's a question of fact that was improper to be resolved on a motion to dismiss as it was by the district court. Counsel, regardless of whether the MDL case involved a point size or not, do you think that settlement binds you in any way? I do not. All right, continue, Mr. Flores. As I was saying, context is crucial. That's from the Mantecas case from this court a few years ago. There's a slew of case law in this circuit and others that says the significance of the disclaimer depends upon factors such as the font size and placement of the disclaimer as well as the relative emphasis placed on the disclaimer and the allegedly misleading statement. That's a quote from the Stoltz case that's cited in our briefing. It's our position that the MDL court approved the language and that's great, but it didn't improve how the disclaimer was actually being used. I think the companies here took advantage of that and more or less buried it at the bottom of the box. If you're sitting there... Part of the problem, and I appreciate what you're saying, but part of the problem is of course in the complaint, this is just Lilian, in the complaint there is no reference to this disclaimer. I understand. Why if you are making a claim of a possible misstatement or misrepresentation on a package, would you not at least advert to the disclaimer and say its font size, its placement didn't sufficiently provide notice to a reasonable consumer? That's why we're here. I understand that. My reading of rule eight is that it does not compel a litigant to anticipate potential affirmative defenses and to affirmatively plead back to avoid such defenses. In that view, especially when we consider that the court allowed the packaging to be introduced, incorporated by reference, the court had everything that it would need to evaluate the packaging. As a result, what doesn't flow from that is, well, sure, the court considered the entire packaging, not just our allegation that ignored what we think is the ineffective disclaimer because our clients didn't rely on it. Putting that aside, the court took notice of the packaging, allowed it to be introduced, and then refused to let us make any, not even allegations, just factual arguments. What is it that you ultimately want? What do you want? At this point, I would like to hear a remand so that we could have the effectiveness of the disclaimer considered by the district court. Do you want to amend your complaint? Is that what you ultimately want? I don't think I should be required to amend my complaint in order to have the arguments on this factual question considered, but I believe it's very possible to do so. Counsel, as I understand it, you came to court to allege, and you did allege in your complaint, that the horsepower claim was false. Is that right? And you, I think quite understandably, did not think you needed to anticipate an affirmative defense of your adversary. Correct. You figured they were capable of defending themselves if they choose to do so. And they are. Okay. Is it also clear that you no longer claim, as you did at an earlier stage of this case, that the disclaimer cannot be considered by the district court? I mean, I think our concern at the earlier stage of this case was one of timing declarations were crafted as such, where we're not quite sure when they were on shelves versus when they were shipped. That aside, I mean, for the purpose of this appeal, I'm willing to, you know, have the court consider the packaging, and I mean, you know, even below, I think the packaging itself actually bolsters our argument as to why the disclaimer is ineffective to the extent we have to get to it. Was the packaging before the district court? The appellee had introduced it, argued that it was incorporated by reference, and the court accepted that. So they are not the physical packaging in front of your honors today, but they were labeling exemplars from corporate records that the court considered below. But let me be clear with you. In answer to my question, you said, yes, the disclaimer can be considered for all, which strikes me as a rather refined position. Is there any reason why the disclaimer, if we do remand, cannot be considered for all purposes in this case? No, Your Honor. Because it's incorporated by reference because your complaint referred to packaging, right? Correct. I mean, I have arguments about whether or not it should be there. It's incorporated by reference at this stage, but I'm not disputing this court's decision on that point below, no. All right. There's a slide we'll hear from the appellee. Good morning, Your Honors, and may it please the court. My name is Ann Voigt, and I represent Appellees Stanley, Black, and Decker. This court should affirm the district court's order for three reasons. First, the district court correctly declined to consider the allegations and complaint, but only in their opposition. Second, plaintiffs had to allege that a reasonable consumer would have been misled, and the plaintiffs themselves were misled, whether that's depending on the claim, through causation, reliance, or actual injury, and they haven't. This was their second chance to do so, and they didn't. They've never grappled with the language of the disclaimer, and instead simply omitted it. They omitted it from the images. They omitted it from their pleadings. And the district court correctly dismissed without leave to amend, because at no point have plaintiffs ever explained how they would amend in a way that would cure that fatal flaw. Counsel, let me deal with your first point. Why should a plaintiff have to anticipate a defendant's defense? Well, here, plaintiffs themselves allege that they read the entire packaging. The packaging itself is incorporated by reference, and the challenge statement here, the five-peak HP, was immediately followed by an asterisk that directed the plaintiff to that. I understand your argument that the disclaimer is a very persuasive disclaimer. That wasn't my question. It was, why should a plaintiff have to, in his pleading, anticipate a defendant's defense? That's what you're saying. They didn't anticipate our defense. But it's not simply the defense. I think it is also part of their claim as a whole. Their claim is that our complaint is false. Well, you can say that, of course. But their claim and their complaint is, your forthcoming claim is false. You claim either 5 or 5.5, and it doesn't perform at that speed. That's their claim. Now, you can defend and say, we explained in the fine print why that is not misleading. But that's your defense. That's not their claim. Again, why should they have to anticipate? Is any case to ever say a plaintiff has to anticipate a defendant's defense? I think this court, in think, said that a plaintiff can't simply omit parts of the challenged representation that don't serve their claim. That's when they claim, that's when somebody comes in and says, this The statement they claim is false is 5.0 horsepower. They didn't leave anything out of that. Well, Your Honor, with respect, I think they did. First, it's 5 peak HP, which is not the same as saying horsepower. Second, that's immediately followed by an asterisk. And the asterisk led to the clarifying language that, as other members of the panel pointed out, had been approved in the prior MDL. Do you think you get the benefit of an approval of a settlement in another case in which this plaintiff was not part of the class? We don't argue that it's binding, Your Honor, but we do think that it is persuasive, and we think that combined with the fact that another district court considered the same language with very similar placing and concluded that both the language itself was sufficiently clear. How about this? How about . . . this is just Luya. How about the font? Was that approved? Your Honor, I think . . . no, the font and the placement were not specifically approved in the MDL. Very similar font and actually somewhat different placement was approved in the Shop Vac District of New Jersey. Do you have the packaging with you? No. Yes, we do have it. Do you have it with you where you sit? Yes. I'm asking . . . Do you have it with you? No, Your Honor. What I have is I have the schematics. What we sent to the court is the only sample that we have because Shop Vac is now out of business. All right. So the court has . . . So you do have the record which gives us a photocopy of it, right? I don't even see it. I do. That's on SA-68. Do you have that handy? I do, Your Honor. Thank you very much. Can you read me what it says? Certainly. So on SA-68, or actually I have it on . . . Your Honor, my apologies. I have it on A-77 through . . . I'd like you to read it from SA-68, which is the record that shows us the actual . . . practically the actual font size. There may be a tiny variation. All right. It shows a width of 3.88, and I think the page . . . Take a look at SA-68. Do you see it? I do, and it refers to . . . I can when I put my reading glasses on. Can you read it? Yes, Your Honor. Don't have to put them on. That's good. Okay. So it says peak horsepower PHP is a term used by the wet-dry industry . . . Can you read from SA-68? Yes, Your Honor. I'm looking at my copy, and if the court looks at . . . In fact, if . . . I'm going to be happy to make this available to the court. If the court actually looks, because the copy itself, I think, is clearer in the actual electronic version. And I'm looking at that now in the exact size. So at 100%, it says peak horsepower PHP is a term used in the wet-dry vacuum industry . . . Wait, wait, wait. What page? . . . for consumer comparison purposes. What page? I'm sorry. This is on . . . So SA-68 is the declaration, and I am looking at what is exhibit . . . It's SA-75. It's exhibit C, and if you look at the electronic version, as opposed to the electronic version that was printed on producing the ER. And I'm reading from that now. It says peak horsepower, parentheses, PHP. I don't understand. Why are you reading from something different than what is on SA-68? Because I'm looking at it in the exact size that it would appear on the box, Your Honor. I've got to tell you, we've got the box here. And what appears on page 75, which is what you're pointing us to, is much clearer to me than what appears on the box, as you look at the box. But you're saying it's the same size, but compared to all of the other items on the box, it's . . . I cannot read it, even with the help of glasses. It's very hard for me to read that. So . . . I think you're on it. And what you're telling us also, what you've told us, what you've confirmed, is that the font size was not part of . . . And we can quibble about whether it's binding, whether it's persuasive, but that was not part of the MDL resolution. Is that correct? Font size and placement were not. You're correct, Your Honor. However, in the shop vac litigation in the District of New Jersey, very similar font and actually slightly placement on the back of the box was not considered misleading. And in here, what is absolutely obvious, looking at the five-peak HP, is that there's an asterisk next to it. And so claimants are in the position of having to argue at the same time that this was so important to them that they would not have bought it at that price had they understood what five-peak HP means. And yet it wasn't so important that seeing a dagger right next to it, they wouldn't actually follow that. Does the dagger . . . This is just Loewe. Hi. Does the dagger by itself signify conspicuousness? Does that satisfy the conspicuousness requirement or standard? Yes, I think that it does. Can you cite a case that says that? Sure, indeed. Koenig, and I may be mispronouncing, Koenig v. Boulder, which is one of the cases on which plaintiff relies, expressly distinguished that case from one where the representation that's challenged is followed by an asterisk or a similar mark. Keir, do you think that it immediately follows . . . Looking at the disclaimer itself, and I'm now at, let's say, 4.01, which is the wood disclaimer, which is big enough so that even I can read it. And it begins by saying peak horsepower, which I take as peak horsepower is the actual number on the front of the packaging. Is that right? It refers to 5 pHP. Right, that's the number on your packaging. Right. And the first sentence of your disclaimer says, peak horsepower is a term used in the wet-dry vac industry for consumer comparison purposes. So you invite the consumer to look at that number and compare it to other numbers of other vacuums, right? Well, for example, as plaintiff alleged in her complaint, there are a range of the names that go from less horsepower to higher peak HP, but I'd point the court to the entire language. The second sentence says it does not denote the operational horsepower output of a wet-dry vac, but rather the horsepower output of a motor. So it's not to the output achieved in laboratory testing, right? That's correct, and it specifically says that. All right. Even if a consumer with good eyesight or maybe a magnifying glass could read this and starts out seeing that the number is there for consumer comparison purposes and then finds out it has to do with laboratory testing, why on earth would they care what's going on in laboratory testing? They want to know what's going on when they use the product. And your first sentence says, horsepower, peak horsepower is a term used for consumer purposes. Why do they care what's going on in laboratory testing? They're not in a laboratory. Well, Your Honor, I think very often most products refer to things based on what happens in laboratory testing because actual use can vary so much. Of course a laboratory might do an experiment of how a householder or an industrial user would use it. I'm not saying that laboratory testing is irrelevant, but when you say laboratory testing, you don't mean to clean up and use the product for its intended purpose. You talk about including the motor's inertial contribution. That's not what the consumer cares about, is it? Well, what the consumer is using, of course, to compare this to, say, 3.5 peak HP. And I think with all due respect, Your Honor, what this court and other courts have reputedly said is that you have to consider all of the language. And so all of the language here makes it very clear. In actual use, motors do not operate at the peak horsepower shown. That was the language that was approved of by the court. Let me cut to the chase. Why do you say on the front, in big letters, what the horsepower is, and then in the tiny type on the side say, well, that's not really the horsepower. That's only something you do in the laboratory. Why do you do that if you're trying to tell the consumer what's going on? I think, Your Honor, it says at medial after 5 peak HP, there's a dagger that directs the consumer to the explanation. I understand your argument that if he sees the dagger and gets to this, he finds out that the number on the front only has to do with laboratory testing. My question is, why do you put the number on the front and then in the fine print on the side or back tell him that's not really the number? Why do you do that? Well, it is the real number in laboratory testing. There's been no dispute about that. The question is, you know, what are you giving the consumer? And this is the explanation that says, look, if you're trying to compare this to, say, a 3.5 peak HP, there's a difference in power. But this is how we measure that power. This is not actually the peak HP that you would get in actual use. Okay. Now let me ask you finally one thing about the district court's approach to this case. Is it so that the district court declined to consider the plaintiff's argument when confronted with your motion dismissed, the district court declined to consider whether the, what I've been calling from the facts, that is the disclaimer, was a good defense? Although the court did say that it declined to consider those, I think it's conclusion that the plaintiff failed to show the factual support necessary to show either that a reasonable consumer would have said that. But they weren't allowed to, were they? The judge says, I'm not going to hear you on what defense. Didn't he? So the court looked at what, the court did evaluate it based on what was actually in the complaint. He may have looked at it, but didn't he decline to let the plaintiff argue a claim that the defense was too good? The plaintiffs were allowed to argue, but what they can't do is amend their complaint, particularly here where he's already faced the same argument. Let me ask you about amending the complaint. He's not putting in a new affirmative claim. The cases you gave us were all affirmative claims. He wanted to, when you came in with a motion to dismiss, he wanted to argue in opposition to your motion, and the district judge says you can't do that. Didn't he? He did, but he also evaluated the complaint. He did. Is there any case anywhere that says a plaintiff cannot argue in opposition to a motion to dismiss? A plaintiff absolutely can argue. What a plaintiff can't do is amend their pleading through their opposition, and that's what plaintiffs were doing here. They never in their complaint ever grappled with the clarifying language. The first time, the only time they did that was not after we filed our first motion to dismiss. So why isn't the answer then to allow them to amend the complaint? So you can't argue, but I'll permit you to amend the complaint to reference, assuming that they have to, to reference this disclaimer and claim in the amended complaint that it's not sufficiently conspicuous. Because, Your Honor, even now they haven't explained how they would do so. Even in their reply they say plaintiffs could amend with additional allegations regarding their understanding of the disclaimer, if any, as well as allegations regarding the disclaimer's size, placement, and context, but they never explain what those actual allegations were. They've never claimed that they read the disclaimer. They've never claimed that they didn't read it. And so something more is required for it to be an abusive disclaimer. They're not here asking to amend their complaint. We don't amend complaints in this period. We sometimes grant leave to amend, but we don't amend complaints. Go back. They were denied the chance to argue. The district judge made it clear, I'm not going to hear you in opposition to your motion. Why shouldn't we simply remand and go back to that point where they wish to make their argument? Whether they need to amend, I guess, could be up to the district court. For my part, I don't know why they need to amend in order to meet the defense. But in any event, why shouldn't it just go back? If the district judge was wrong to say, you can't oppose a motion to dismiss, if he was wrong, then shouldn't we send it back to him to move on from that point? It shouldn't go back, Your Honor, because even if this court were to consider all of these arguments, and those arguments have all been fully briefed in front of this court, plaintiffs can't show that a different result, that is, non-dismissal, would be appropriate. We think in this case the district court was correct, whether you affirm on the basis that they couldn't raise those arguments or because those arguments should be rejected on the merits. We think here the general rule articulated by the cases on which plaintiffs rely, courts have routinely held that disclaimers cure allegedly misleading representations on the front of the packaging, but they do so, and when they don't, it's only where the alleged misrepresentation is clearly stated, and the disclaimer is exceedingly vague. There's no claim here that the disclaimer is vague. The only argument is about where it appears on the packaging and the sides. And plaintiffs are stuck in the position, I'm sorry, Your Honor. Your time has expired. Why don't you wind up that sentence? Finish that sentence. Thank you, Your Honor. I was simply going to say that plaintiffs are in a position where they have to argue at the same time that this was so important that they would not have bought it but for this representation, and yet not so important that they would not have followed the asterisk that led them to the clarifying language, the content of which they don't dispute, and which prior courts have approved. That, I thank you, Your Honor. This is just really, I actually have one more question. So could the district court have relied on the disclaimer language if it found or if we determined that the clarifying language was inconspicuous, was insufficiently conspicuous? So the court certainly could have considered the clarifying language. I mean, the issue for the court was that plaintiffs never explained whether they had read it or not. But if it relied on a disclaimer that we or that it was not sufficiently conspicuous, wouldn't that be a problem? So I think, Your Honor, it was sufficiently conspicuous. I understand that, but if we disagreed with you on the conspicuousness, would that not be a problem for the district court to have relied on the disclaimer? I think that would be something where it would be appropriate to send it back to the district court to consider. But that's not the case here because there's a very large dagger that appears directly next to the language. I understand the argument. So this isn't a case where a plaintiff has to go searching and isn't on notice that there is some explanation of that particular language. Thank you, counsel. Given that, I thank the court. Mr. Klosik, you've reserved three minutes for rebuttal. Can we get Mr. Klosik back? I think he's muted. Sorry about that. I had it back. I'm not sure I used my mouse to unclick. Thank you, Your Honor, for the time. Just a few quick points. And starting with Judge Louis' last comment first, if the court today were to determine that the disclaimer was inconspicuous, I mean, I don't know what much there is to do other than a complete reversal of the district court because it's a question of fact as to whether or not every question that's being raised in the judgment of Smith is really a question of fact that needs to proceed through fact discovery and ultimately to a jury or the ultimate fact finder. So I kind of feel like this begs the question, what good is the asterisk or the dagger here if you can't even read the disclaimer, right? To me, it just seems circular. Oh, we got the disclaimer, we got the dagger, we're putting you on notice. But, you know, make sure you brought your magnifying glass and pulled it out of your back pocket while you're standing three feet from the shelf. Do you agree that, and I gather that the font from both of you was the font size was not part of a negotiated settlement in the MDL, so there is no litigation-wide resolution of that fact, is that correct? That's my understanding. Okay. Counsel, to the extent, can you hear me? I can. Okay. To the extent we thought that font size was important, and if we thought that the font size on the Montgomery packaging either was not conspicuous enough or at least raised a fair question, would we have to send back the Wood case as well, which I understand has larger font? The difference with Wood, and so this is on, give me one second, page SA398 of Defendants, I think it's volume two of their appendix, is an example of the Wood packaging, and if you notice there, the disclaimer actually isn't even on the front panel of the packaging, the one I would be facing consumers while they're shopping at Home Depot or Lowe's or an Ace Hardware, it's on the side. So imagine taking the box and having to manipulate something that's actually built with a product inside of it. That's a different point. It may be that placement is a sufficient issue for just dealing with size. At SA401, the width is to be seven inches, as distinguished from 3.8 on the Montgomery. So I'm wondering, focusing just on .5, is the disclaimer in a sufficient point size to be configured? I don't know what's sufficient or what's not, because we haven't taken discovery. So what a reasonable consumer would, I'm not the one to make that determination. So I think you have to take into consideration all the factors, all the context. So you say you haven't taken discovery. There's no discovery you can make of the defendant that tells us whether seven-inch width is sufficient, is there? Well, presumably this would be right for an extra discovery where we'd probably do a consumer survey and expose different individuals to different variations of packaging in order to come up with that. You think you can do that now? No, that's my point, and that kind of hammers home the issue, right? We're on a motion to dismiss tongue of cadence, and they're making arguments as a matter of law that should be reserved for summary judgment. And I don't think the argument forecloses to the validity or effectiveness of the disclaimer. It's just not one to be decided today. So, Counsel, this is just Loehr. I'd asked you earlier what it is that you wanted. Is what you want to go back to the district court and make arguments about the disclaimer, or do you want something more? I mean, I think that's the bare minimum, right, is that we should have been allowed to present this argument. But since this Court's considering the issue de novo, and if the Court's inclined to find that the disclaimers are inconspicuous, I think that just requires a reversal of the motion to dismiss, and we should just proceed into discovery because, you know, every issue is intertwined with the disclaimers as far as the defendant is concerned. Thank you. Thank you, Counsel. Thank you both. We'll reserve decision.